## NASH *et al. v.* PEOPLES LOAN AND REALTY COMPANY.

GEORGE, J. 1. The constitution of 1868 did not and that of 1877 does not contain any provision forbidding the head of a family to alienate his reversionary interest in a homestead set apart under the statutory provisions now embraced in the Civil Code of 1910, §§ 3416, 3417. *Walker* v. *Hodges*, 113 *Ga.* 1042 (39 S. E. 480); *Carrie* v. *Carnes*, 145 *Ga.* 184 (88 S. E. 949). Where the beneficiaries of such homestead estate acquire an absolute title to the reversionary interest in the property out of which the homestead estate was carved, and it does not appear that it was the intention of the beneficiaries to keep the two estates separate, the lesser or homestead estate is merged in the greater or absolute estate, and the beneficiaries in whom the two estates unite may convey the fee in the land absolutely or for the purpose of securing a debt. *Goodell* v. *Hall*, 112 *Ga.* 435 (37 S. E. 725); *Muscogee Manufacturing Co.* v. *Eagle & Phenix Mills*, 126 *Ga.* 210 (7), 218 (54 S. E. 1028, 7 L. R. A. (N. S.) 1139).

2. Applying the foregoing principles, the jury was authorized to find that the land was not incumbered by a homestead estate at the time of the execution of the security deed.

3. On the question of usury in such deed the evidence was conflicting, and the verdict finding against the plea of usury was authorized by the evidence.

4. The evidence authorized the verdict, and no sufficient reason has been shown for granting a new trial.

*Judgment affirmed. All the Justices concur.*

NO. 2006. JANUARY 14, 1921.

Equitable petition. Before Judge Hammond. Richmond superior court. February 28, 1920.

The defendant in error brought suit against H. K. Nash on a series of notes, each for $6.56 principal, with interest from maturity at 8 per cent., secured by deed to 2.03 acres of land, which deed contained a power of sale. Thereafter H. K. Nash, his wife Phillis, and his daughter Eva Blair brought a petition alleging: that the defendant corporation (plaintiff in the suit on the notes) had advertised the land for public sale under a power in the security deed; that on May 28, 1888, a part of the land was set apart as a statutory or short homestead to the wife and two minor children of Nash (one of the minors having since died), the part referred to being ¾ of an acre with improvements, whereon petitioner resided, bounded on one side by a road and on the other three sides by lands of named persons; and that the debt to secure which the deed was given by Nash was a loan of $200 made to him, which was infected with usury and was null and void, for the reason that $36 (interest at six per cent. for three years) was reserved by the defendant at the time the loan was made, and the only money actually received by Nash was $64, with $100 paid out for his account to take up a previous loan for that sum. The petitioners prayed, for injunction against exercising the power of sale, and against interfering with their possession; for cancellation of the security deed; and for general relief. The defendant answered; and the two actions were consolidated and tried as one, resulting in a verdict in favor of the plaintiff in the suit on the notes, for $229.60 and interest, and in favor of the validity of the security deed. The plaintiffs in the equitable action moved for a new trial, and excepted to a judgment refusing it. In their motion they alleged, in addition to the general grounds, (1) that the evidence failed to disclose what part of the land described in the security deed constituted the homestead included in the conveyance, and hence the entire tract as described in the deed could not be sold to satisfy the debt; (2) that said deed was executed contemporaneously with a deed of gift to Nash from his wife and daughter (dated one day before the date of the security deed), as part of a colorable transaction to secure the husband's debt by gift of the

wife's property which included the homestead, and hence the deed was void; and (3) that the preponderance of credible testimony showed that the security deed was infected with usury.

It appeared from the evidence that Nash acquired title to the land by buying several parts of it at different times (except "the lower part," which had been given to his wife) ; that the deeds were destroyed by fire; and that in 1899, when he bought the last part, he received a deed to the 2.03 acres. Later in that year he conveyed the property to his wife and daughter (the latter being then sixteen years of age, as the record indicates). The wife and daughter conveyed the land to secure loans made in the years 1900, 1903, 1904, and 1910, the last of these (for $100 principal, called the Wiseman loan) being outstanding and unpaid when the loan from the defendant was obtained. The wife and daughter conveyed to H. K. Nash, on consideration of love and affection, on June 14, 1915; and the notes in question were of the same date, the deed securing them being dated one day after. There was a direct conflict of testimony as to whether the deed to Nash from his wife and daughter was made on the statement of Mulherin, attorney and president of the defendant company, that he had paid $100 to the attorney representing the outstanding loan, and that the papers must be signed, or he would carry them to court and make them sign; and that they signed to keep from going to court. Mulherin testified that this arrangement was entirely voluntary on their part; he did not try to make them do it. He further testified that from the $200 loaned he deducted $115.54 as the amount of principal and interest due on the outstanding loan, $2.35 paid for recording the papers, a fee of about $17 for himself that he charged for examining the title and drawing the papers, and that the rest of the $200 was $64, which he turned over to Nash. The defendant was operating under the law of 1912 (Park's Code, § 3442-a). The principal and three years interest were added, and the amount divided into 36 monthly notes for $6.56 each. It appeared that Nash had applied for the loan, to take up the Wiseman loan and to erect an improvement on the land with the rest of the money. He gave testimony indicating that the interest on the Wiseman loan was paid in advance; and that Mulherin said he did not charge anything.

*George T. Jackson* and *Henry G. Howard,* for plaintiffs.

*Joseph S. Watkins,* for defendant.